

BRITTANY N. HERRON,
        Plaintiff,

-vs-

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,
        Defendant.

CAUSE NO.: A-16-CA-00425-SS

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Plaintiff Brittany N. Herron's Brief on Review of the Denial of Benefits by the Commissioner of Social Security [#12], Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration's Brief in Support of the Commissioner's Decision [#14], the Report and Recommendation of the United States Magistrate Judge [#15], and Plaintiff's Objections to the Report and Recommendation [#16]. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders ACCEPTING the Report and Recommendation and AFFIRMING the judgment of the Commissioner.

All matters in the case were referred to the Honorable Andrew W. Austin, United States Magistrate Judge, for report and recommendation (R&R) pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges. The Magistrate Judge issued his R&R, finding the Commissioner's decision should be affirmed. Plaintiff is entitled to de novo review of the portions of the Magistrate Judge's report

to which she filed specific objections. 28 U.S.C. § 636(b)(1). All other review is for plain error. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc). Nevertheless, this Court has reviewed the entire file de novo, and agrees with the Magistrate Judge's recommendation.

## Background

This is an appeal from a denial of child's disability benefits and supplemental security income (SSI). On May 18, 2012, Plaintiff Brittany N. Herron protectively filed applications for child's disability benefits and SSI. Social Security Tr. (Tr.) [#9] at 289–99. In her applications, Plaintiff alleged she has been disabled since January 1, 2003, due to endometriosis, fainting, seizures, inflamed lungs, and PTSD. *Id.* at 346. The Commissioner denied Plaintiff's applications and her request for reconsideration. *Id.* at 159–183.

Plaintiff then requested a hearing on the Commissioner's denial before an Administrative Law Judge (ALJ), which was held on May 30, 2014. *Id.* at 32–51. Plaintiff, medical expert Thomas McKnight, Jr., Ph.D (ME), and vocational expert Thomas Paulson (VE) testified at the hearing. During the hearing, Plaintiff amended her alleged disability onset date from January 1, 2003, to March 1, 2012, the date she last worked full time.[1] *Id.* at 43–44. At the end of the hearing, the ALJ ordered that Plaintiff undergo a consultative mental examination. *Id.* at 76. On June 12, 2014, Gerald Gardner, Ph.D., completed the exam. *Id.* at 939–51.

On September 24, 2014, the ALJ denied Plaintiff's application, *id.* at 9–32, and the Appeals Council declined Plaintiff's request for review on February 1, 2016. *Id.* at 1–6. Plaintiff has exhausted her administrative remedies and now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

---

[1] To qualify for child's disability benefits, a person must be found disabled before she reaches 22 years of age. Plaintiff was under 22 years of age on March 1, 2012. Tr. at 37. She turned 22 years old on May 25, 2012. *Id.*

## Analysis

I. **Standard of Review**

Judicial review of the ALJ's decision is limited. Specifically, this Court reviews: (1) whether the ALJ's decision was supported by substantial evidence; and (2) if so, whether the ALJ made any errors of law in evaluating the evidence. *Austin v. Shalala*, 994 F.2d 1170, 1174 (5th Cir. 1993). Procedurally, the administrative process need not have been perfect, and this Court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Procedural errors are therefore a basis for remand only if they "would cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 334 (5th Cir. 1988).

Substantial evidence "means more than a scintilla, but less than a preponderance," *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988), and is "evidence that a reasonable mind would accept as adequate to support the decision." *Morris*, 864 F.2d at 334. In making these determinations, the Court must "carefully scrutinize the record" to determine if there is substantial evidence to support the ALJ's conclusions, but the Court can neither re-weigh the evidence nor substitute its judgment for that of the ALJ. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). If the Court finds substantial evidence to support the decision, the Court must uphold the decision. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court considers four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

3

The Social Security Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine if a claimant is able to engage in "substantial gainful activity" (and therefore if he is disabled), the Commissioner follows a five-step process:

1. The hearing officer must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The hearing officer must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3. The hearing officer must then determine if the impairment equals or exceeds in severity certain impairments described in Appendix 1 of the regulations. This determination is made using only medical evidence.

4. If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity[2] to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

See Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); 20 C.F.R. § 404.1520.

A finding of disability or no disability at any step is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). The claimant has the burden of proof for the first four steps. Selders, 914 F.2d at 618. At step five, the burden initially shifts

---

[2] Residual functional capacity (RFC) refers to the claimant's ability to do work despite any physical or mental impairments. 20 C.F.R. § 404.1545(a). The ALJ is responsible for assessing and determining residual functional capacity at the administrative hearing level. Id. § 404.1546. This assessment is based on reports from treating physicians and medical consultants about the claimant's ability to sit, stand, walk, lift, carry, and perform other work-related activities. Id. §§ 404.1513(b)(6), 414.1513(c)(1).

to the Commissioner to identify other work the applicant is capable of performing. *Id.* If the Commissioner "fulfills his burden of pointing out potential alternative employment, the burden then shifts back to the claimant to prove that he is unable to perform the alternate work." *Id.* (internal quotation marks and citation omitted).

## II. The ALJ's Opinion

The ALJ determined Plaintiff has the following impairments: thrombocytopenia; possible endometriosis; depressive disorder, not otherwise specified; anxiety disorder, not otherwise specified, with panic symptoms; PTSD; and borderline intellectual functioning. Tr. at 15. Proceeding through the five-step analysis, the ALJ found as follows. First, Plaintiff is not engaged in substantial gainful activity, although since March 1, 2012, she "has essentially worked full-time for her sister providing daily childcare for her three-year old niece and eight-month old nephew." *Id.* at 14–15. Second, Plaintiff's impairments are "severe because the impairments have been diagnosed by acceptable medical sources and they cause more than a minimal effect on [Plaintiff's] ability to perform basic, work-related activities." *Id.* at 15–16. Third, none of Plaintiff's impairments, either alone or in combination, meet or medically equal any of the impairments listed in Appendix 1 of the regulations. *Id.* at 16–18. Fourth, Plaintiff is unable to perform her past relevant work as a telemarketer. *Id.* at 23.

Turning to the fifth factor, the ALJ determined that despite Plaintiff's inability to perform her past job, there are jobs in the national economy which Plaintiff would presently be able to perform, such as a laundry folder, housekeeping cleaner, or small part assembler. *Id.* at 23–24. The ALJ found Plaintiff's "reported activities of daily living show that she is able to perform many tasks including daily childcare which are tasks that transfer well to a work setting." *Id.* at

20. Consequently, the ALJ determined Plaintiff is not "disabled" within the meaning of the Social Security Act. *Id.* at 65.

III. **Application**

Plaintiff raises five points of error: (1) the ALJ erred in finding Plaintiff was not per se disabled under Medical Listing 12.05(C); (2) the ALJ failed to properly weigh the medical opinion evidence of treating physician Richard Samuel, M.D. and consulting psychologist Dr. Gardner and to properly determine Plaintiff's RFC; (3) the ALJ failed to properly evaluate Plaintiff's credibility; (4) the ALJ failed to pose a proper hypothetical question to the VE; and (5) new evidence Plaintiff provided to the Appeals Council warrants remand of Plaintiff's case. Pl.'s Br. [#12] at 17–33; Pl.'s Objs. [#16] at 1–9. The Court considers each ground for relief in turn, and concludes the Commissioner's decision to deny Plaintiff's applications for benefits was warranted.

A. **Intellectual Disability under Medical Listing 12.05(C)**

Plaintiff first argues she is per se disabled under Medical Listing 12.05(C), which provides a diagnostic description of an intellectual disability:

> Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(C). In addition to this description, Listing 12.05 provides four sets of criteria under paragraphs A, B, C, and D. Of particular relevance to Plaintiff's claim is paragraph C, which is satisfied with evidence of:

> A valid verbal, performance, or full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

*Id.* Plaintiff must separately satisfy both the diagnostic description, requiring evidence of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," and the criteria set forth in paragraph A, B, C, or D to be deemed disabled under Listing 12.05. *See Randall v. Astrue*, 5570 F.3d 651, 659–60 (5th Cir. 2009). Adaptive functioning is generally described as a person's "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe*, 509 U.S. 312, 329 (1993). For instance, adaptive functioning activities include "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for grooming and hygiene, using telephones and directories, and using a post office." *Campos v. Astrue*, No. 5:08-CV-155-C, 2009 WL 1586194, at *2 (N.D. Tex. June 8, 2009).

Here, the record contains sufficient evidence supporting the ALJ's finding that Plaintiff did not have adaptive functioning deficits. In her opinion, the ALJ states, "there is no evidence that [Plaintiff] has [ ] adaptive functioning deficits in personal care[,] communicating, socializing as she sees fit, working, observing safety issues, using community resources, homeliving, self-direction, following direction, or being aware of her health." Tr. at 17. Specifically, the ALJ points to evidence that Plaintiff worked as a telemarketer and as a childcare provider for her three-year-old niece and eight-month-old nephew. *Id.* Plaintiff also had no problems with personal care, "could prepare simple meals, do household choirs, shop, and interact[ ] with her friends." *Id.*

Plaintiff argues she does have deficits in adaptive functioning because "she has never had a consistent job with earnings equivalent with substantial gainful activity." Pl.'s Br. [#12] at 18;

Pl.'s Objs. [#16] at 2. However, Plaintiff's argument is unpersuasive, because a person's failure to engage in substantial gainful activity as defined by the Commissioner does not automatically mean the person has deficits in adaptive functioning—in other words, substantial gainful activity and adaptive functioning are not equivalent. *See* 20 C.F.R. § 404.1572. The ALJ's determination relied on Plaintiff's ability to perform adaptive functioning activities, not whether she had a job that constituted a substantial gainful activity.[3]

Plaintiff further argues she meets the requirements of paragraph C of the Listing because she "consistently has IQ testing in the required range." Pl.'s Br. [#12] at 18; Pl.'s Objs. [#16] at 2–3. In her decision, the ALJ found Plaintiff's current IQ score of 65 was invalid because the score was inconsistent with Plaintiff's actual functional abilities and her prior IQ scores of 70, 74, and 84. Tr. at 17. It is well-known that an ALJ may make factual determinations on the validity of IQ tests. *See Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989). For example, the ALJ may decide not to fully credit the score if there is evidence to show that is unreliable, invalid, or inconsistent with other evidence in the record. *See, e.g., Cole v. Barnhart*, 69 F. App'x 658, 658 (5th Cir. 2003) (rejecting IQ score as indicative of intellectual disability in light of Plaintiff's work history). Here, there is substantial evidence supporting the ALJ's

---

[3] Plaintiff also contends "it is unclear if the ALJ applied the correct legal standard," because the ALJ concluded Plaintiff did not have "*significant* deficits in adaptive functioning" as opposed to "deficits in adaptive functioning." Pl.'s Br. [#12] at 19. Because the Court finds there is substantial evidence in the record that the Plaintiff had deficits in adaptive functioning, at the very least, the Court need not analyze the standard under Listing 12.05 in depth, though at least some courts have stated the standard does require "significant deficits." *See, e.g. Falgoust v. Massanari*, No. CIV.A. 01-1948, 2002 WL 465174, at *3 (E.D. La. Mar. 26, 2002) ("Listing 12.05(C) requires evidence of *significant* deficits of adaptive functioning before age 22, a valid IQ score of 60–70, and at least one additional and significant physical or other mental impairment.") (emphasis added).

determination that Plaintiff's current IQ score was inconsistent with other evidence in the record, such as her functioning abilities and previous IQ scores.[4]

In sum, substantial evidence exists to support the ALJ's decision that Plaintiff was not intellectual disabled as described by Listing 12.05(C).

**B.      The Medical Opinion Evidence**

Plaintiff argues the ALJ erred by failing to properly weigh the opinion of treating physician Dr. Samuel. In particular, Plaintiff asserts the ALJ should have given Dr. Samuel's opinion controlling weight because it was based on appropriate clinical and diagnostic evidence. Pl.'s Br. [#12] at 20. Even if Dr. Samuel's opinion was not entitled to controlling weight, Plaintiff argues the ALJ failed to use the factors provided in 20 C.F.R. § 404.1527 and § 416.927 to determine how much weight to give his opinion. *Id.* at 20–21. Plaintiff also alleges the ALJ failed to properly weigh the opinion of consultative psychologist Dr. Gardner. *Id.* at 23–24. Finally, Plaintiff alleges the ALJ erred in determining Plaintiff's physical and mental RFC. *See* Pl.'s Objs. [#16] at 6.

   **i.      Dr. Samuel**

Under 20 C.F.R. § 404.1527(c)(2), the opinion of a "treating source" on the nature and severity of a claimant's impairments is given controlling weight if the Commissioner finds the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in [the] case record." *Id.* § 1527(c)(2). The treating physician's opinions are not conclusive, however, and the ALJ is "free to reject the

---

[4] Because substantial evidence exists that Plaintiff did not show deficits in adaptive functioning and did not have a valid IQ score of 60–70, the Court need not address the second aspect of paragraph C of the Listing: whether Plaintiff has "a physical or other mental impairment imposing an additional and significant work-related limitation of function." *See* Pl.'s Br. [#12] at 18; Pl.'s Objs. [#16] at 3.

opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

When the ALJ rejects a treating physician's opinion, she is generally required to reference the factors listed in 20 C.F.R. § 404.1527(c)(1)–(6) in so doing. *Id.* at 456. Those factors include: (1) the physician's length of treatment of the claimant; (2) the physician's frequency of examination of the claimant; (3) the nature and extent of the treatment relationship; (4) the support in the record for the physician's opinion; (5) the consistency of the physician's opinion with the record as a whole; and (6) the physician's specialization. *Id.*; *see* 20 C.F.R. § 404.1527(c). However, "[n]either the regulation nor interpretive case law requires that an ALJ specifically name, enumerate, and discuss each factor in outline or other rigid, mechanical form." *Wiltz v. Comm'r of Soc. Sec. Admin.*, 412 F. Supp. 2d 601, 608 (E.D. Tex. 2005).

The ALJ determined Dr. Samuel's opinion was not supported by the record and contained internal inconsistences. Tr. at 26. For instance, the ALJ found nothing in the record supporting Dr. Samuel's opinion that Plaintiff could only sit for 4 hours during an 8-hour period and stand/walk for 4 hours during an 8-hour period. *Id.* The ALJ also pointed to certain inconsistencies within Dr. Samuel's "scant treatment notes." *Id.* at 26. For example, in his questionnaire, Dr. Samuel noted he did not find it necessary to recommend Plaintiff not sit continuously in a work setting, yet at the same time wrote Plaintiff must get up and move around constantly.[5] *Id.* at 926. The ALJ found this constituted "an extreme variance in the degree of limitation," which was not supported by the record. *Id.* at 21; *see also Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (assigning little weigh to treating physician's questionnaire "due to its brevity, conclusory nature, lack of explanatory notes, or supporting objective tests and

---

[5] Plaintiff argues "[i]t is clear that [this] inconsistency was based on a misunderstanding by the doctor." Pl.'s Objs. [#16] at 4. The Court sees no reason to assume Dr. Samuel misunderstood his questionnaire, and the record does not support such a misunderstanding.

10

examinations . . . ."). Further, Dr. Samuel opined Plaintiff could never lift or carry more than 10 pounds, which the ALJ found conflicted with Plaintiff's testimony that she worked fulltime taking care of her niece and nephew. *Id.* at 21, 64–66 (finding Plaintiff likely lift/carries 20 pounds on a frequent basis while providing childcare). For these reasons, the ALJ's refusal to give Dr. Samuel's evaluation controlling weight was not in error.

In addition, the ALJ considered multiple factors from § 404.1529(c) in determining how much weight to afford Dr. Samuel's testimony. As described above, the ALJ discussed whether there was "support in the record for [Dr. Samuel's] opinion," *see* 20 C.F.R. § 404.1527(c)(4), and analyzed "the consistency of [Dr. Samuel's] opinion with the record as a whole," *see* 20 C.F.R. § 404.1527(c)(5). *See also Newton*, 209 F.3d at 456. Though the ALJ did not specifically list the factors, her analysis incorporated at least some of the factors. *See Wiltz*, 412 F. Supp. 2d at 608.

Even if the ALJ's analysis of the § 404.1527(c) factors was insufficient, Plaintiff did not suffer prejudicial harm. *See Mays v. Bowen*, 837 F.3d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of the parties have not been affected."). After reviewing the record, this Court finds substantial evidence supports the ALJ's decision to afford Dr. Samuel's opinion little weight. In addition to the inconsistencies and lack of support from the record discussed by the ALJ, Dr. Samuel's questionnaire, signed April 22, 2014, shows he had been treating Plaintiff for less than two months. Tr. at 930 ("I started regularly evaluating [Plaintiff] on 3/6/14 . . ."); 20 C.F.R. § 404.1527(c)(1)–(2). What's more, the record includes evidence that Dr. Samuel is a family practitioner who does not specialize in gynecological or mental health issues and who does not regularly perform mental health examinations. Tr. at 46; 20 C.F.R. § 404.1527(c)(6).

### ii.     Dr. Gardner

Plaintiff also argues the ALJ erred in giving little weight to Dr. Gardner's report that Plaintiff suffered from adaptive deficits and mental limitations. Pl.'s Br. [#12] at 24. Specifically, Plaintiff claims "[t]he ALJ failed to offer any good reasons for not giving any weight to Dr. Gardner's opinions on Ms. Herron's mental impairments." *Id.*

Because Dr. Gardner is a nontreating physician, "[he] is not accorded the controlling weight given to treating physicians." *Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008); *see also Rodriguez v. Shalala*, No. 93-8712, 1994 WL 499764, at *2 (5th Cir. 1994) ("[W]here the examining physician is not the claimant's treating physician and where the physician examined the claimant only once, the level of deference afforded his opinion may fall correspondingly."). Further, "it is well-established that an ALJ can consider all the evidence in the record without directly addressing each piece of evidence in his opinion." *Vandestreek v. Colvin*, No. 7:14-CV-00001-O, 2015 WL 1239739, at *6–7 (N.D. Tex. Mar. 17, 2015); *see also Penalver v. Barnhart*, No. SA–04–CA–1107–RF, 2005 WL 2137900, at *6 (W.D. Tex. Jul. 13, 2005) ("The ALJ may not have discussed all of the evidence in the record to the extent desired by Plaintiff, but the ALJ is only required to make clear the basis of his assessment—he need not discuss all supporting evidence or evidence rejected.").

Contrary to Plaintiff's argument, the ALJ did provide reasons for finding Dr. Gardner's opinions were not entitled to significant weight. The ALJ discounted Dr. Gardner's opinion regarding Plaintiff's adaptive deficits because it was inconsistent with the record, which included evidence of Plaintiff's full-time position as a child-care provider. Tr. at 21. Further, Dr. Gardner's opinion regarding Plaintiff's mental limitations was internally inconsistent (i.e. his check-marked conclusions did not match his narrative conclusions); he did not review the entire

record in the case; and his findings strongly suggest he placed undue reliance on Plaintiff's subjective allegations. *Id.* at 22. Finally, four non-treating state agency medical consultants evaluated Plaintiff and concluded she did not suffer from a severe physical or mental impairment. *Id.* Because the ALJ clearly considered and weighed Dr. Gardner's opinions, the Court finds she did not err in assigning Dr. Gardner's opinions little weight.

### iii. RFC Determination

Plaintiff argues because the ALJ disregarded Dr. Samuel and Dr. Gardner's opinions, there was no evidence to support the ALJ's determination that Plaintiff retained the RFC to perform light work, lift/carry 20 pounds occasionally and 10 pounds frequently, stand/walk for 6 hours in an 8-hour workday and sit for 6 hours in an 8-hour work day, and to occasionally stoop, squat, crouch, crawl, and kneel. Tr. at 18–19.

An individual's RFC represents "the most [a claimant] can still do despite his limitations." 20 C.F.R. §§ 404.1545, 416.945. To determine a claimant's RFC, the ALJ may consider statements made by the claimant as well as observations of the limitations by the claimant's treating or examining physicians, psychologists, family, friends, or other persons. *See Hollis v. Bowen*, 837 F.3d 1378, 1386–87 (5th Cir. 1988); 20 C.F.R. § 404.1545(a). As discussed above, "an ALJ has considerable discretion in assigning weight to medical opinions and may reject the opinion of any physician when the evidence supports a contrary conclusion." *Vandestreek*, 2015 WL 1239739, at *8.

Here, the ALJ considered Plaintiff's own testimony that she worked in the past as a telemarketer and at various cashier positions and currently provides daily childcare for her niece and nephew. Tr. at 19. The ALJ also relied on Plaintiff's statements that she was only prescribed six pain pills a month by her physician, signaling the infrequent nature of her pain.

13

*Id.* Further, the ALJ noted the state agency medical consultants indicated Plaintiff "did not have any 'severe' physical or mental impairment that imposed even minimal limitation upon her capacity for work-related activity." *Id.* at 22. Thus, contrary to Plaintiff's allegations, the ALJ's decision was not based on "her own unsupported opinion as to the limitations presented by [Plaintiff's] medical conditions." Pl.'s Br. [#12] at 25. The Court finds the ALJ's RFC determination was based on substantial evidence.

C.  **Plaintiff's Credibility**

Next, Plaintiff asserts the ALJ erred in concluding Plaintiff's testimony "concerning the intensity, persistence and limiting effects of [her] symptoms are not fully credible." Tr. at 20.

Social Security Ruling SSR 96-79 prescribes a two-step process for an ALJ evaluating a claimant's subjective complaints. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). An ALJ must first consider whether the claimant had a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* Once an impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms to determine the extent to which they limited the claimant's ability to do basic work activities. *Id.* Whenever the claimant's statements concerning the intensity, persistence, or limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ makes a credibility finding regarding the claimant's statements. *Id.*

The ALJ's credibility determination must be based on consideration of the entire record, including medical signs and laboratory findings, and statements by the claimant and her treating or examining sources concerning the alleged symptoms and their effect. *Id.* The ALJ must also consider a non-exclusive list of seven relevant factors in assessing the credibility of a claimant's statements: (1) the individual's daily activities; (2) the location, duration, frequency, and

intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *Id.* at *3. Although the ALJ must give specific reasons for her credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form." *See Giles v. Astrue*, 433 F. App'x 241, 249 n.30 (5th Cir. 2011); *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005). Along these lines, the Fifth Circuit has explicitly rejected the requirement that an ALJ "follow formalistic rules" when assessing a claimant's subjective complaints. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Finally, the ALJ's evaluation of the credibility of subjective complaints is entitled to judicial deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991) (per curiam). The ALJ is in the best position to assess a claimant's credibility, because she "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco*, 27 F.3d at 164 n.18.

Here, the ALJ stated Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but concluded Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible." Tr. at 20. The ALJ points to the fact that Plaintiff testified she can currently perform many activities, including fulltime childcare, which conflicts with the alleged severity of her symptoms; that she

15

was prescribed six pain pills a month, which "undermines the nature, frequency and intensity of the pain she contends"; that despite allegations of PTSD, the record shows Plaintiff "has not been involved in prior documented mental health therapy or counseling, which further discredits her allegations of depression and anxiety"; and that she performed jobs as telemarketer and cashier in the past despite similar complaints of pain. Tr. at 20–21. Although not in a formalistic fashion, the ALJ considered the entire record and the factors for determining credibility, including Plaintiff's daily activities, the location, duration, frequency, and intensity of Plaintiff's pain, medication Plaintiff took to alleviate the pain, and other treatment Plaintiff received. *See* SSR 96-7p, 1996 WL 374186, at *3.

Plaintiff argues the ALJ erred because she rejected Plaintiff's allegations "simply 'because the available objective medical evidence does not substantiate [the claimant's] statements.'" Pl.'s Br. [#12] at 27–28 (citing 20 C.F.R. § 404.15929(c)(2) and § 416.929(c)(2)). However, the ALJ's reasoning was not based solely on objective medical evidence. Rather, the ALJ's credibility determination highlights the conflict between Plaintiff's testimony that she was able to perform many daily activities, including childcare, and Plaintiff's alleged symptoms and pain severity. *See* Tr. at 20–21.

Plaintiff also complains that the ALJ did not cite to medical evidence to support her conclusion that Plaintiff's medication dosage of six pills a month was inconsistent with her alleged pain, and that the ALJ did not consider that Plaintiff's failure to seek treatment for her PTSD could have been due to her lack of insurance. Pl.'s Br. [#12] at 28; Pl.'s Objs. [#16] at 8. These arguments are unconvincing. The ALJ was not required to cite objective medical evidence in her analysis of the factors, and even if she were required, Plaintiff's medication dosage was only one of many factors that supported the ALJ's credibility determination.

Further, the record contains no evidence that Plaintiff failed to seek treatment for her PTSD due to lack of insurance. In sum, Plaintiff does not show the ALJ erred in making her credibility determination, and the determination is supported by substantial evidence in the record.

**D.    Hypothetical Posed to VE**

Plaintiff also argues the ALJ's finding is not supported by substantial evidence because the hypothetical she posed to the VE and relied on in making her decision did not reasonably incorporate all of Plaintiff's limitations. Pl.'s Br. [#12] at 29.

At step five of the disability determination process, the ALJ considers whether the claimant can perform alternative work, given her RFC. If the ALJ has found the claimant does not have the RFC to perform past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. In making this determination, the ALJ relies on the medical-vocational guidelines or the testimony of a VE. A hypothetical posed to a VE must incorporate reasonably all of the disabilities recognized by the ALJ in order for the VE's opinion to constitute substantial evidence supporting the ALJ's decision. *See Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994).

Here, the ALJ directed the VE to consider an individual mentally limited to simple, routine tasks, SVP 3 level tasks, or lower semi-skilled jobs, provided there is no need for changes in the routine work setting and no more than superficial contact with coworkers or the general public. *See* Tr. at 72. Plaintiff asserts this hypothetical fails to account for the ALJ's finding that Plaintiff has moderate restrictions in concentration, persistence, or pace. Pl.'s Br. [#12] at 29. The Court, however, finds the ALJ's question adequately reflects these limitations. The ALJ asked the VE to assume an individual was limited to "simple, routine tasks, SVP 3 level tasks, or lower semi-skilled jobs," which reflects that the ALJ reasonably incorporated Plaintiff's

17

moderate concentration, persistence, and pace limitations. *See Bordelon v. Astrue*, 281 F. App'x 418, 423 (5th Cir. 2008) (finding hypothetical question stating claimant needed a job with "only rare public interaction, low stress, and simple one- to two-step instructions" adequately reflected claimants moderate concentration, persistence, and pace limitations); *see also Adams v. Astrue*, No. CIV. A. CV07-1248, 2008 WL 2812835, at *4 (W.D. La. June 30, 2008) ("A limitation to simple, repetitive, routine tasks adequately captures deficiencies in concentration, persistence or pace."). Plaintiff's authority from this circuit does not convince the Court otherwise. *See, e.g., Ellis v. Astrue*, No. 7:09-CV-70-O-BF, 2010 WL 3422872, at *5–6 (N.D. Tex. Jul. 27, 2010). In *Ellis*, the court found the ALJ's hypothetical question was improper because it described a person with "*mild* deficiencies in concentration, persistence, or pace" when the ALJ found the claimant had "*moderate* difficulties with concentration, persistence, or pace." *Id.* (emphasis added). That discrepancy does not exist here. Therefore, the ALJ did not err in relying on evidence from the VE.

E.     **New Evidence**

Finally, Plaintiff argues the Appeals Council did not properly consider the new evidence Plaintiff submitted on appeal. Pl.'s Br. [#12] at 32. The new evidence consists of a report from examining psychologist Dr. Jack M. Litman, dated May 14, 2015. According to Plaintiff, Dr. Litman's report shows the ALJ's decision was not based on substantial evidence. *Id.* at 32–33. The Commissioner argues the Court may not review the Appeals Council's decision to deny review of the ALJ decision and, if review is allowed, Dr. Litman's report does not alter the ALJ's decision because it "at best, merely documents subsequent deterioration of a previously non-disabling condition, or an additional impairment not yet in existence during the relevant time period." Commissioner's Br. [#14] at 18.

When a claimant submits new and material evidence that relates to the period before the date of the ALJ's decision, the Appeals Council must consider the evidence in deciding whether to grant a request for review. 20 C.F.R. § 404.970(b). The regulations do not require the Appeals Council to discuss the newly submitted evidence, or to give reasons for denying review. *See Sun v. Colvin*, 793 F.3d 502, 511 (5th Cir. 2015). New evidence submitted to the Appeals Council becomes part of the record upon which the Commissioner's decision is based. *See Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). A court considering the Appeals Council's decision must review the record as a whole to determine whether the Commissioner's decision is supported by substantial evidence, and should remand only if the new evidence dilutes the record to such an extent that the ALJ's decision becomes unsupported. *See Higginbotham v. Barnhart*, 163 F. App'x 279, 281–82 (5th Cir. 2006); *Morton v. Astrue*, No. 3:10–CV–1076–D, 2011 WL 2455566 at *7 (N.D. Tex. June 20, 2011) ("The proper inquiry concerning new evidence takes place in the district court, which considers whether, in light of the new evidence, the Commissioner's findings are still supported by substantial evidence.") (citations omitted).

Newly submitted evidence is material if: (1) it relates to the time period for which the disability benefits were denied; and (2) there is a reasonable probability that it would have changed the outcome of the disability determination. *Castillo v. Barnhart*, 325 F.3d 550, 551–52 (5th Cir. 2003) (per curiam). Evidence of a later-acquired disability or a subsequent deterioration of a non-disabling condition is not material. *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985). Generally, "the Commissioner need 'not concern evidence of later-acquired disability or of the subsequent deterioration of the previously nondisabling condition,'" because

they fail to meet the materiality requirement. *Powell v. Colvin*, No. 3:12-CV-1489-BH, 2013 WL 5433496, at *11 n.9 (N.D. Tex. 2013) (quoting *Johnson*, 767 F.2d at 183).

Here, Dr. Litman's report is not material because there is no reasonable probability it would have changed the outcome of the ALJ's disability determination. Dr. Litman's report largely repeats Plaintiff's diagnosis and symptoms from the original record and does not undercut any of the ALJ's findings or conclusions. Further, the report concerns evidence of subsequent deterioration of Plaintiff's previously nondisabling condition. *See Colvin*, 2013 WL 5433496, at *11. Plaintiff argues Dr. Litman's opinions are material because they are consistent with Dr. Gardner's opinions, but, as explained above, the ALJ discounted Dr. Gardner's opinions based on evidence in the record. In sum, the ALJ's decision is supported by substantial evidence, and Dr. Litman's report does not dilute the record to such an extent that the ALJ's decision is unsupported.

## Conclusion

The ALJ's decision was supported by substantial evidence, and the ALJ did not make any errors of law. Therefore, the decision of the Commissioner in this case is AFFIRMED.

Accordingly:

IT IS ORDERED that the Report and Recommendation of the United States Magistrate Judge [#15] is ACCEPTED; and

IT IS FINALLY ORDERED that the decision of the Commissioner of the Social Security Administration to deny benefits to Brittany N. Herron is AFFIRMED.

SIGNED this the 16th day of June 2017.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE